[No. 9926.  Department Two.  March 9, 1912.]

H. S. JACKSON, *as Administrator etc., Respondent*, v.
BESSIE LAMAR, *as Administratrix etc., Appellant.*[1]

GIFTS—INTENT—DELIVERY—NECESSITY. While the law favors the
free disposition of property, and the rigor of the earlier cases as to
gifts is materially relaxed, a mere expression of an intent or pur-
pose to give is not alone sufficient, and delivery, actual or construc-
tive, is essential.

GIFTS—PRESUMPTION—EVIDENCE. An oral gift is not presumed,
but title must be proven by clear, convincing, and satisfactory evi-
dence.

GIFTS—EVIDENCE—SUFFICIENCY. The evidence is insufficient to
show a gift by plaintiff's intestate of a wheat crop for the year
1906, and a threshing machine purchased by the deceased in July,
1906, about four months prior to his death, he having a few years
previously deeded a valuable wheat farm and made bills of sale of
all his personal property to three nephews (the alleged donees) re-
serving a life estate, where it merely appears that the deceased
had stated to a nurse and notary that he had given all his personal
property to the boys, and there was evidence of neighboring farmers
showing that the boys had been in full control of the farm, and that
the wheat receipts had been indorsed to them; especially in view
of the fact that, a short time before his death, he had given checks
to them closing up his bank account, without making any transfer
of the wheat or threshing machine, their management of the farm
being consistent with the written arrangement whereby the de-
ceased reserved to himself all the rents and profits, and with his
retention of the wheat crop and his purchase of the threshing ma-
chine on his own account, and there being no legal evidence that he
ever parted with title to the property in dispute, or of any change
in the possession thereof.

GIFTS—PROMISE TO MAKE GIFT—PERFORMANCE—ACCEPTANCE. A
gift cannot be supported by a promise to make a gift if the donee
would come west and take charge of a farm, where the alleged
donee, after coming west and acting upon the offer, accepted a deed
of gift and a bill of sale of certain property definitely fixing and
limiting the relation of the parties; the ownership of the property
being fixed by the deed and bill of sale and not by the preliminary
offer.

[1]Reported in 121 Pac. 857.

13—67 WASH.

TROVER AND CONVERSION—VALUE OF PROPERTY—EVIDENCE—SUFFI-
CIENCY. In an action to recover the value of a threshing machine
that had been used one season, findings fixing its value at 30 per
cent less than its cost are sustained by evidence that it had deterio-
rated about 30 per cent, in one year's use, although the same witness
on cross-examination stated that a lot of harvest machinery would
not sell for more than half its cost.

SALE—BILL OF SALE—TITLE—RETENTION OF POSSESSION—EFFECT.
A bill of sale reserving a life estate having been delivered and re-
corded, will pass the title, although the seller retained possession of
it until his death.

EXECUTORS AND ADMINISTRATORS—ACTIONS — ASSETS — EMBEZZLE-
MENT—DOUBLE DAMAGES—STATUTES. . One innocently coming into
the possession of property under claim of ownership by an alleged
gift from the deceased is not liable for double damages under Rem.
& Bal. Code, § 1460, providing for double damages if any one shall,
before the granting of letters of administration, embezzle or alienate
any of the effects of the estate.

Cross-appeals from a judgment of the superior court for
Walla Walla county, Brents, J., entered February 7, 1911,
upon findings partly in favor of each party, in an action for
conversion, after a trial on the merits to the court.    Affirmed.

*Sharpstein & Sharpstein* and *James H. Hull*, for appel-
lant.

*Rader & Barker* and *T. P. & C. C. Gose*, for respondent. ·

MORRIS, J.—This action was brought by respondent to
recover the value of 21,575 47-60 bushels of wheat, and other
personal property, from David Lamar, a nephew of Joseph
Lamar, who claimed the right of possession as against the
estate, under a claim that the wheat and other property had
been given to him and his two brothers by his uncle, during
his lifetime. The court below found in favor of respondent
as to the wheat, which was valued at $15,102.50, and a
threshing machine valued at $2,457.91; to which amounts
interest was added, on the wheat from May 1, 1907, and on
the threshing machine from January 1, 1907, to the date of
the finding, January 20, 1911, making a total finding of
$21,538.88 in favor of respondent. The remainder of the

personal property was awarded David Lamar and his two brothers, and both parties have appealed.

Since the filing of the original briefs here, David Lamar has died and Bessie Lamar, his administratrix, has been substituted in his stead. Much of the controversy here is upon the proper rules of law applicable to cases of this character, as to what constitutes a gift, and the character of evidence demanded by the law to sustain it. We are not disposed to review these contentions, as we believe the law relating to gifts to be well settled and the announcement of the controlling rules will be sufficient. As is said in Thornton on Gifts, § 217:

"What constitutes a gift—what combination of circumstances will bring a case within the legal definition of a gift—is essentially a matter of evidence and not of law; and each particular case must depend upon its own circumstances, and must be such as to authorize the belief that a gift was intended."

Under the old cases, gifts were looked upon somewhat with suspicion as fruitful sources of litigation, lacking those formalities and safeguards which the law throws around wills, and creating strong temptation to the commission of fraud and perjury. They were not favored by the law, and almost conclusive evidence was required to sustain them. Such, however, is not now the rule. The law regards with favor every man's right to dispose of his property as he will and when he will, and favors as much his disposition by gift, when the intent and the act are clearly established by competent evidence, as though he had undertaken to dispose of his belongings by the stricter formality of a written disposition. We find the rule so stated in *Crook v. First Nat. Bank of Baraboo*, 83 Wis. 31, 52 N. W. 1131, 35 Am. St. 17:

"The law favors free and comprehensive power of disposition by an owner of his property, and the rigor of the earlier cases has been materially relaxed, both as to the subjects of such gifts and as to what will serve as a delivery to make them effectual."

While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis*, than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that the law now presumes against a gift, it certainly does not presume in its favor, but requires proof. *Lewis v. Merritt*, 113 N. Y. 386, 21 N. E. 141; *Devlin v. Greenwich Sav. Bank*, 125 N. Y. 756, 26 N. E. 744. The modern rule that, the intention of the donor having been ascertained, great latitude should be given in carrying out that intention, still demands a delivery as perfect and complete as the nature of the property and the attendant circumstances and conditions will permit. *Blake v. Jones*, 1 Bailey's Eq. (S. C.) 141, 21 Am. Dec. 530; *Phinney v. State ex rel. Stratton*, 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119.

Having, as we believe, correctly stated the law governing cases of this character, we will now notice the evidence upon which appellant relies to sustain the theory of a gift. Joseph Lamar was an old resident of Walla Walla county. He had accumulated about 7,000 acres of land and much personal property. He was a bachelor and, so far as this record goes, had no relatives nearer than Missouri. His age is not given, but it is apparent from the record that he was well along in years. On January 9, 1902, he wrote to his brother at Weston, Missouri, as follows:

"Your note at hand. Can't you send David out and let him see this country. I would like for him come and take charge of my place as I am not able to do it myself. I will

divide with him as long as I live when I am gone I will let
the boys take the place.   I have close to 6,000 acres of land
that is worth 100,000 thousand or more.   I am going down
hill all of the time, it is only 4 or 5 days trip to my place.
Maby Parte would come out with him and Joseph Lamar.   I
have 1,200 acres of wheat in this fall.   I haven't sold last
years crop, 20,000 bushels.   Wheat is looking up.   I may
sell soon."

In response to this letter, David Lamar came to his uncle,
and on February 28, 1902, Joseph Lamar executed a deed
whereby he conveyed to David Lamar and his two brothers,
Joseph and James N. Lamar, a large tract of land, approx-
imating 7,000 acres, reserving and excepting all the rents,
issues, profits, and the exclusive right of possession of the
lands conveyed for and during his lifetime.   On March 17,
1902, he executed a bill of sale of all his horses, cattle, ma-
chinery, and all other personal property to the same three
nephews, reserving to himself, as in the deed of the real
property, the right of full possession during his lifetime,
and fixing delivery as at the time of his death.   From that
time, David Lamar took full charge of his uncle's affairs,
and conducted all his business operations, including the man-
agement of the farm lands, until the death of Joseph, Octo-
ber 24, 1906.   The record does not disclose what became of
the 20,000 bushels of wheat Joseph had on hand at the time
he wrote the letter of January 9, 1902, nor what disposition
has been made of the wheat crops or other products of the
farm for the years 1902 to 1905 inclusive, the wheat in issue
here being the 1906 crop.   On November 25, 1902, Joseph
Lamar gave David a check for $5,000, for what purpose is
not disclosed; and on September 10, 1906, about a month and
a half prior to his death, he closed his account at the bank
by giving David a check for $2,621.49 and on the same day
he executed a deed whereby he conveyed to David eighty acres
of land without reservation or exception.   The notary who
drew the deed and took his acknowledgment, and a nurse
who acted as a witness to the deed, testify that, at that time,

he was asked about the disposition of his personal property, to which inquiry he replied in substance that he had given it to David and the boys. Other testimony relied upon is as follows: Harvey Shaw testified that, soon after David came to his uncle (early in 1902), Joseph Lamar said to him, "I sent for him and he came out and I gave him all I had." Ed Shaw testified that in 1905 he went to Joseph Lamar to purchase a ham, and Joseph then said to him, "I have turned everything over to Dave, and he put up this meat to do the farm work," and he did not know whether there was any meat for sale or not. Thomas Hoggerty testified that in 1904 he bought some hogs of Joseph Lamar, and when he came down to pay for them Joseph told him to settle with David; that he also wanted some pasture land, and Joseph told him to see David about it, because he had turned everything over to the boys. M. S. Jones testified he was the purchasing agent of the 1906 wheat crop in issue here; that as it was delivered to the warehouse, receipts were issued; that the first few receipts were issued to Joseph Lamar, and the remainder to David, and that subsequently, when the grain was shipped, the receipts issued to Joseph Lamar were delivered to him with Joseph's indorsement thereon. Edgar Johnson testified that, in August, 1906, he went to Joseph Lamar to purchase some small pigs, and was then told by Joseph that everything had been turned over to Dave, and he would have to see him. Ed Powers wanted to sell some seed wheat in the spring of 1906, and went to see Joseph Lamar and was told to see David about it, as he had control.

This completes the evidence upon which David Lamar relied to sustain a gift of this wheat crop of 1906 and the threshing machine which had been purchased by Joseph Lamar in July, 1906. It seems to us, as it did to the lower court, that it is wholly insufficient for that purpose. It is conceded by all that David, from the spring of 1902, was in full charge of all the business affairs of Joseph Lamar, and

that from that time Joseph Lamar retired from any active
participation in the management of his farm, leaving David
in full control.   The testimony of the neighboring farmers
who sought Joseph, making inquiries as to the purchase of
hogs, hams, and wheat, establishes nothing other than that
Joseph had placed David in full control and refused to inter-
fere with his management of the farm.   The informal acts
of Joseph Lamar, such as these conversations referred to,
must be interpreted in the light of his formal acts.   He had,
by his bill of sale, evidenced the relation between these boys
and himself as to his personal property.   It was subject to
his full and absolute possession so long as he lived.   He was
willing that David should control it and operate it in con-
nection with the farm, but it was to remain in the possession
of the old gentleman until his death.   The indorsement of
the wheat receipts does not prove a gift of the wheat.   Such
an act is consistent with every other act of Joseph as related
by these various witnesses—turning over the control and
management of his affairs to David, and the indorsement of
the receipts made for the purpose of enabling David to
handle the crop and make all arrangements for its sale, with-
out further annoyance to him.   There is in none of these
related transactions any evidence, of the character required
by the law, that Joseph Lamar had given David Lamar and
his brothers the proceeds from the sale of the 1906 wheat, nor
this threshing machine.   All of these conversations, save the
one of September 10, 1906, took place prior to the purchase
of the threshing machine in July, 1906.   If, then, as David
seeks to prove by these witnesses, the old gentleman had given
him and his brothers, prior to that time, everything he pos-
sesses, what need had he for a threshing machine, and why did
not David purchase the machine himself if he owned every-
thing else, and not have it purchased in the name of Joseph
Lamar?   It seems to us this fact is significant, in connec-
tion with the bill of sale, executed when David first came
west; that it was the intention of all that, while David was

to have full management and control, the old gentleman's lawful possession was not to be disturbed until after his death. The delivery of these two checks to David is strong proof that it was the intention of the old gentleman to give him the money represented by those checks. On the other hand, if the evidence of appellant's witnesses is sufficient to support a gift, David owned all the personal property including the proceeds of the farm, which we assume, since no other source of income is disclosed, was the source from whence came the money in the bank. If David owned the crops, he also owned the money paid in the purchase of those crops; and why, may we ask, did he not deposit the money in the bank in his own name? The fact that it was deposited in the name of Joseph is proof of the fact that Joseph and David both considered it the money of Joseph, and that it would require some special and independent act to transfer that ownership to David. The evidence of the notary and the nurse that, on September 10, 1906, Joseph Lamar told them he had given all his personal property to the boys, is strong presumptive proof of Joseph's purpose and intention to do so. While purpose and intention to make a gift are essential to establish the gift, they alone cannot make a gift. They are strong factors in determining the making of a gift, but until accompanied by some act of delivery either actual or constructive, they are insufficient. No court would establish a gift when the only evidence to establish it was the declaration of the owner that he had given it away. *Evans v. Lipscomb*, 31 Ga. 71.

"Where the subject of a gift is already in the possession of the donee, the law does not require the useless ceremony of a delivery back to the donor in order that the property may be redelivered by him to the donee. It is sufficient to complete the gift that the conduct of the parties should show that the ownership of the property has been changed, that the donee should continue to hold it thereafter as owner, and that the donor has relinquished all claim in his favor." 14 Am. & Eng. Ency. Law (2d ed.), 1019.

Accepting the above rule, we have here no evidence of any change of possession. David had the management and control, but Joseph had the legal and actual possession of all the personal property. This is evidenced by the bill of sale, and by the bank account in his name. The law will not presume a change of this possession in order to supply the needed evidence of a gift, but will require some evidence upon which to establish it. There is none in this case. Would it be contended for a moment that, upon this record, David could have successfully maintained possession of all the personal property as against the old gentleman, upon the theory it had been given to him? The bill of sale and the checks would have been sufficient to refute any such claim. To hold that there was a gift of this wheat and this threshing machine, we must find from this record we have quoted when the old gentleman was divested of his right of property, and when David was invested with it; when the old gentleman parted with his present and future dominion over it, and when David assumed it. It cannot be done, and the law will not assume it. Suppose, again, David and his brothers had died before the old gentleman, would this record establish the right of their heirs to the property as against the old gentleman? We think not, and yet if appellant's contention be true, this record must furnish the evidence upon which they could successfully establish such a claim.

Appellant next contends that, failing to establish David's right to the property under the gift theory, she is entitled to one-half of the property, because of the letter of January 9, 1902, wherein Joseph said that, if David came out, he would divide with him as long as he lived. There are two answers to this contention: (1) a promise to make a gift is not a gift, and (2) the ownership of the property was fixed, not by the letter but by the deeds and the bill of sale; and David's acceptance of the bill of sale and the placing it of record is indicative that both regarded it and not the letter as establishing their rights in the property.

The next contention is that the value of the threshing machine should be fixed at $1,700, rather than $2,457.91, as found by the court. The evidence upon which the court based this finding was that the property cost $3,511.30, and had deteriorated about thirty per cent in the one year's use. This would make the value $2,457.91, as found by the court. Appellant's contention is based upon the cross-examination of the same witness, in which he said that "a whole lot of harvest machinery would not sell for more than one-half of what you gave for it," and that the price of this machine was about $3,400. The evidence justified the finding of the court, and the value as so fixed will remain.

Two questions are presented upon respondent's cross-appeal: (1) That he should be awarded the personal property mentioned in the bill of sale, and (2) he should be awarded double damages. As to the first contention, the bill of sale having been delivered and recorded is sufficient to pass the title to the property therein described, and the fact that Joseph Lamar retained the possession during his lifetime does not invalidate it. *Tarbox v. Grant*, 56 N. J. Eq. 199, 39 Atl. 378; *Horn's Exr's v. Gartman*, 1 Fla. 73; *Caines v. Marley*, 10 Tenn. 581, 24 Am. Dec. 515; *Davis v. Garrett*, 91 Tenn. 147, 18 S. W. 113; *Tierney v. Corbett*, 2 Mackey (D. C.) 264; *Walker v. Crews*, 73 Ala. 412.

Respondent's second contention is based upon Rem. & Bal. Code, § 1460:

"If any person, before the granting of letters testamentary or administration, shall embezzle or alienate any of the moneys, goods, chattels, or effects of any deceased person, he shall stand chargeable, and be liable to the action of the executor or administrator of the estate, in double the value of the property so embezzled or alienated, to be recovered for the benefit of the estate."

David Lamar came into possession of this property under a claim of ownership. His possession was, therefore, an innocent one, and he could not be held as for an embezzlement. *Beckman v. McKay*, 14 Cal. 251.

All assignments of error being denied, the judgment is affirmed.

Dunbar, C. J., Mount, and Ellis, JJ., concur.