[No. 11942.   Department Two.   July 22, 1914.]

SUSAN FAULEY, *Respondent*, v. EARL J. McLAUGHLIN, *as Administrator etc., et al., Appellants.*[1]

GIFTS—CAUSA MORTIS—REQUISITES—DELIVERY.   Under the rule that, in order to constitute a gift *causa mortis*, the donor must not only signify his intention to make the gift, but he who asserts title by gift must prove delivery, either actual or symbolical, by clear and satisfactory evidence, such a gift is not established by evidence showing that decedent, at the time he was preparing to undergo a surgical operation, wrote, sealed and addressed, but never mailed, a letter to the lady to whom he was engaged to be married, reciting that "if anything should happen to me, I want you to have one-fourth (¼) of my entire estate after debts, if any, are paid;" that he recovered from the operation, but died from the infirmity about a year and a half later; that subsequent to writing the above letter, he made inquiries of an attorney in regard to the execution of a will, and was told that, in the absence of a will, his estate would be divided share and share alike among his sisters; and the above letter after his death, being found among his effects, still sealed, was mailed by the sisters, in ignorance of its contents, to the lady to whom it was addressed.

[1]Reported in 141 Pac. 1037.

Appeal from a judgment of the superior court for King county, Smith, J., entered October 23, 1913, upon findings in favor of the plaintiff, in an action to recover an interest in an estate. Reversed.

*E. L. Skeel* and *W. M. Whitney*, for appellants.

*James E. McGrew* and *E. P. Dole*, for respondent.

MOUNT, J.—This action was brought by the plaintiff to recover a one-fourth interest of the net value of the estate of Charles E. Eastman, deceased. The action is based upon a letter written by Mr. Eastman, as follows:

> "Seattle General Hospital
> "Seattle, Wn., July 30, 1910.
> "Susie Dear: Dr. Peterkin tells me he is going to open my kidney Monday and put in a drainage tube.
> "If anything should happen to me, I want you to have one-fourth (1/4) of my entire estate after debts, if any, are paid.
> "Lots of love from yours faithfully.
> "C. E. Eastman, Gramp.
> "To Miss Susie Fauley,
> "Phoenix, Ariz., R. F. D. No. 2."

After a demurrer to the complaint had been overruled, and issues made on the allegations of the complaint, the case was tried to the court without a jury. The court made findings of fact in favor of the plaintiff, and entered a judgment as prayed for in the complaint. The defendants have appealed.

The principal question of fact tried below was whether or not Miss Fauley and the deceased, Charles E. Eastman, were engaged to be married at the time of Mr. Eastman's death. The court found as a matter of fact that they were so engaged, and we shall assume in this opinion that the court correctly found from the evidence upon this fact.

The facts of the case, aside from the question of the engagement of Miss Fauley to Mr. Eastman, are substantially undisputed, and are as follows: Mr. Eastman died intestate on February 18, 1912, leaving in this state an estate valued

at more than $200,000, consisting of both real and personal property. The appellants, Lilly Tracy, Emma A. Abbott, and Electra Wood, are the sisters and only heirs of the deceased.

Prior to the year 1894, Mr. Eastman was engaged in the logging business, near Saginaw, Michigan. In that year, he met financial reverses, and was left largely in debt with no property to meet his obligations. In that year, he met Miss Fauley, who was then a girl eighteen years of age. He was a man of thirty-eight. They became engaged to be married in 1894. In the year 1900, Mr. Eastman came to the city of Seattle. He was then $18,000 in debt. He thereafter acquired large interests in real estate and timber lands in this state. He was furnished money by friends in the east who had an interest with him in these lands. From that time until 1910, his business ventures were successful, and, while he had no ready money of his own, he held his interests until about the year 1911. The apparent reason why he and Miss Fauley were not married was that, prior to the year 1910 his financial condition was not favorable to marriage, and after that time his health did not permit of marriage. He visited Miss Fauley at her home in Phoenix, Arizona, where she was living with her father, in the year 1900. And she, at his request, visited Mr. Eastman in Seattle in the year 1907; and again in the year 1909.

In the year 1910, Mr. Eastman was taken sick and his physician advised him that an operation would be necessary. He went to the Seattle General Hospital on July 30, 1910, and on that day wrote the letter hereinabove quoted. This letter was written by Mr. Eastman prior to undergoing the operation mentioned. The letter was enclosed in a government stamped envelope, sealed, and addressed to the plaintiff. It was not mailed. The operation mentioned was performed on the next day. Mr. Eastman thereafter recovered from its effect. After his recovery, he transacted his business as usual until in the year 1911, when he sold one-half of his

real estate holdings, closed his office in Seattle, sold his office furniture, and moved his papers and belongings to a basement in the house of a friend in Seattle. The disease from which he was suffering from the time of the operation until the time of his death is stated as "Bright's disease."

In January, 1912, he again went to the hospital in Seattle, and was advised by his physician to go to the Battle Creek sanitarium, in Battle Creek, Michigan. At that time, he was in a very weakened condition. He and a friend of his packed his baggage. His valuable papers, including notes, mortgages, and deeds to real estate, were placed in a large trunk and checked through from Seattle to Battle Creek. A suit case and a satchel were also packed with necessary articles that he desired to take with him. In the satchel, which was not opened from the time he left Seattle until after his death, were some old letters, receipts, and memorandum books, maps, etc. Among these was the letter hereinabove quoted. Whether this letter was packed in the satchel by the deceased, or by his friend, is not shown. A nurse was employed to accompany him on his journey from Seattle to Battle Creek. On the trip east, he was not able to leave his berth. He was cared for by the nurse. When they arrived at Chicago, he was met by one of his sisters. He left Seattle for Battle Creek on February 4, 1912. He arrived at the Battle Creek Sanitarium on the 10th of February, and thereafter gradually declined until February 18, 1912, when he died of cirrhosis of the liver. After his death, his body was taken by his sisters to Bradford, Vermont, for interment.

Thereafter, on February 27, 1912, his sisters investigated the contents of his baggage, and found mortgages and notes of the face value of $80,000, and other valuable papers in his trunk. In the satchel they found the envelope containing the letter above quoted. Not knowing the contents of this letter, and knowing nothing of the person to whom it was addressed, they caused the letter to be placed in the mail, and in due course it reached Miss Fauley.

An administrator of the estate was afterwards duly appointed in Seattle, this state. Miss Fauley filed a claim with the administrator, claiming a one-fourth interest in the estate of the deceased. This claim was rejected by the administrator, whereupon this action was brought against the administrator and the three sisters of the deceased.

Upon the trial of the case, it was shown by the plaintiff that, after the date of July 30, 1910, Mr. Eastman had inquired of an attorney in Seattle concerning the requisites of a will, and was informed that, in the absence of a will, the law provided that his estate would be divided share and share alike among his heirs, which were his three sisters. In his memorandum book, after the date of the letter, was a notation in his handwriting as follows:

"Nonintervention will, which provides that no court proceedings are necessary, but to take advantage of this clause, same must so state in the body of the will. Straight will."

The trial court was of the opinion that the letter above quoted showed an intention on the part of the deceased to leave a one-fourth interest in his estate to Miss Fauley, his fiancee. And we have no doubt that such was his intention at the time the letter was written, if he had died under the operation referred to, or from the effects of that operation. But the fact is clearly shown that he recovered from that operation, and went about his business for more than a year thereafter. The letter was never mailed to Miss Fauley by Mr. Eastman. He apparently wrote the letter with his own hand, and placed it in the envelope, sealed it, and put it away among his effects. After that time, he inquired of an attorney, then practicing in the city of Seattle, in regard to the requisites of a will, and the necessity for one, and was advised upon these points. No will appears to have ever been drawn or executed by him. After that time, while he was possibly improved in health, the disease was upon him which finally carried him off. He was conscious, according to the testimony, up to within two days of his death. He did not men-

tion a will, nor did he mention the fact that he had written the letter. It was discovered when searching through his effects, and mailed at the instance of his sisters to the person to whom it was addressed. While it no doubt was his intention at the time the letter was written to leave an interest in his estate to his fiancee, it is not shown by clear evidence that that intention existed a year and a half afterwards when he finally came to die.

Many authorities are cited by the appellants and by the respondent upon the effect and requisites of a gift *causa mortis*. But we think our own decisions are sufficient upon this point. In *Atwood v. Atwood*, 15 Wash. 285, 46 Pac. 240, where a deed had been signed but not delivered, and which was found among the papers of the grantor after his death, and where it was not clearly shown by the evidence that the deed had been delivered, or that the grantor intended that it should be, it was held that the deed did not become effective. In that case this court said:

"In coming to these conclusions we have not lost sight of the able argument and large array of authorities contained in the brief of appellant, to the effect that the delivery of a deed does not necessarily require any formal act on the part of the grantor; that it is often a question of intention; that a deed may become operative while the manual possession is retained by the grantor. But in such cases, before the court can find a delivery, the intention to consummate the transaction so as to fully vest the title in the grantee must be clearly shown, and neither the findings of fact by the referee nor by the superior court, nor the evidence in the case, satisfies us that the grantor in the deed under consideration ever did anything with the intention that by doing it he had so delivered the deed as to make it presently operative."

In *Phinney v. State ex rel. Stratton*, 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119, where John W. Collins gave his check for $4,000 to Frank Phinney, and said: "If I do not get over this I want Frank to get my money; I don't want it to go to Skagit county;" and before the check was cashed Mr.

Collins died, we held that the delivery of the check was sufficient as a gift *mortis causa*. We said in that case, at page 243:

"And, recurring again, a moment, to the essential qualifications of the gift, it is true that, in cases of gifts *mortis causa*, there must be a delivery of the thing given, and this is the rock upon which courts have so often split. And it is also true that it must be as nearly an actual delivery to the donee as the circumstances of the case, and the nature and actual position of the donee, and the thing given, will permit. But, in the very nature of business transactions of this kind, this delivery must frequently be constructive. The nature and circumstances surrounding this case necessitated a constructive delivery. The subject of the gift was not available. The decedent did all that was in his power to do to deliver the money in the bank at LaConner to the appellant. So that, in justice and common sense, it seems to us that the delivery was complete, and that the will of the deceased ought not to be thwarted by any technical construction or definition of delivery."

In *Matson v. Johnson*, 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924, where the deceased, during his last illness, called in a neighbor and directed him to prepare a deed and a will in order that he might execute them, where a deed was accordingly prepared purporting to convey the property in controversy to three minors, where the instrument was signed by the grantor in the presence of witnesses but was not acknowledged because there was no officer present authorized to take acknowledgments, where the grantor stated that he would appoint Mr. Johnson to have the deed acknowledged and properly executed, we held that the deed was sufficient, and that the intention to consummate the transaction was clearly and unequivocally shown.

In *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857, where a donor had stated that he had given his personal property to his nephews, and there was evidence that the boys had been in full control of the property, we held that the gift was complete. In that case we said:

"While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis*, than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that the law now presumes against a gift, it certainly does not presume in its favor, but requires proof. *Lewis v. Merritt*, 113 N. Y. 386, 21 N. E. 141; *Delvin v. Greenwich Sav. Bank*, 125 N. Y. 756, 26 N. E. 744. The modern rule that, the intention of the donor having been ascertained, great latitude should be given in carrying out that intention, still demands a delivery as perfect and complete as the nature of the property and the attendant circumstances and conditions will permit."

And in *Thatcher v. Capeca*, 75 Wash. 249, 134 Pac. 923, where a deed had been executed by the grantor prior to his death, and where the grantee had been placed in possession of the property, and the grantor directed that the deed be recorded after his death and charged a third person with the duty of recording the deed, and attempted to deliver possession of the deed prior to his death, we held there was a sufficient delivery of the deed. In that case, quoting from *Atwood v. Atwood, supra*, we said:

"But in such cases before the court can find a delivery, the intention to consummate the transaction so as to fully vest the title in the grantee must be clearly shown."

From these cases, it is clear that, in order to constitute a gift *causa mortis*, there must not only be an intention to make the gift, but there must be something done to complete the gift. The donor must not only signify his purpose, but he who asserts title by gift must prove delivery, either actual

or symbolical "by evidence that is clear, convincing, strong and satisfactory."

In this case, the intention to make a gift at the date the letter was written is all that was proved. There was no delivery of the letter by Mr. Eastman, either to the United States mail, or to any person with instruction that it be mailed. Its mailing after the death of Mr. Eastman was without authority and was purely accidental. After the date of the letter, it is shown without dispute, that Mr. Eastman inquired as to the law of this state with reference to the descent of his property, and was informed that, without a will, it would go to his sisters, share and share alike. He afterwards made no will. He was in the possession of his faculties for a year and a half after the date of the letter. He either knew he had the letter in his possession, or he had forgotten its existence. At any rate, he did nothing to deliver the letter, and certainly did nothing to deliver any of his property to the respondent. The fact that he intended to give to the respondent one-fourth of his property after his recovery from the operation mentioned, is entirely overcome by the fact that he afterward made inquiries with reference to the descent of his property, and thereafter executed no will. There is no claim that he attempted, either actually or symbolically, to deliver any of the property which he intended to give to the respondent. He had ample opportunity after the date of the letter to give to the respondent a part or all of his property by will or otherwise, but he did not avail himself of that opportunity. He knew that, under the law, without a will, his property would descend to his sisters, and to no one else. He made no will. We are satisfied that the proof in this case fails entirely to show a completed gift *causa mortis*, or at all. The most that it does is to show that Mr. Eastman intended a gift a year and a half before his death; but this intent was never carried into execution. It clearly failed under the liberal rule of our own cases above cited.

The judgment of the lower court is therefore reversed, and the cause ordered dismissed.

Crow, C. J., Parker, Fullerton, and Morris, JJ., concur.