[No. 14113. Department One. August 18, 1917.]

## MAY MacKENZIE, *Respondent*, v. L. E. STEEVES, *Administrator etc., Appellant.*[1]

GIFTS—CAUSA MORTIS—DELIVERY—EVIDENCE—SUFFICIENCY. A gift *causa mortis* is sufficiently shown where, during his last illness, the deceased, addressing the donee, said "I give you my automobile, May," the intent to give was obvious, and there was no fraud or undue influence, and the donee accepted by taking charge of the automobile for several days until it was taken over by the administrator; since the intent, in such case, will answer for the delivery and the law favors the disposition of property by the owner before death.

REPLEVIN—DAMAGES. In replevin for an automobile, which plaintiff testified she intended to "keep for a little while or else rent it," the measure of damages for detention is the amount that will fairly compensate for the loss of use.

EXECUTORS AND ADMINISTRATORS—PRESENTATION OF CLAIM—EFFECT —DAMAGES IN REPLEVIN. In replevin against an executor, the damages for detention date from the time of taking, and not from the date of presentation of the claim as a condition precedent to action.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered January 13, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action of replevin. Affirmed.

*James B. Murphy*, for appellant.

*Reed & Hardman*, for respondent.

MAIN, J.—H. A. Steeves died at Providence Hospital, in Seattle, on Sunday, October 3, 1915, at about 2:30 p. m. He had been taken to the hospital on the preceding Wednesday,

[1]Reported in 167 Pac. 50.

suffering from acute appendicitis. For some months prior to his death, Steeves had maintained an apartment in the Regent apartment house. McDougal Cameron, a cousin of the respondent, lived with him. Respondent, who had been a friend of Steeves and of his former wife, was frequently in the apartments, which she kept picked up and in order. Some six weeks before his death, Steeves purchased an automobile. He and the respondent, who was engaged to marry him, made frequent use of the machine. Respondent, with the help of a nurse, which she provided at her own expense, cared for the deceased from Monday until Wednesday at the apartment, and after he was removed to the hospital, she was there the greater part of each day. She ministered to his wants, providing gruel, alcohol, champagne and new linen. So far as we can judge from the testimony, there was a real attachment and mutual understanding between the deceased and respondent. At about eight o'clock on Sunday morning, the nurse observed that the deceased, who had passed a restless night, was changing for the worse, and she told him "If he had any special business he had better have it attended to, because he was a lot weaker and seemed to have changed quite a little."

She further testifies:

"I called in the head sister on the floor and she also said he had better dispose of anything he wanted to because he was pretty weak. He said, 'I want my automobile to go to Miss MacKenzie' and he wanted his business to go to his mother. That was about between eight and nine in the morning. I knew that wouldn't be very legal so when I called up Miss MacKenzie I told her he was quite a little worse and so when she came in the room I asked him to repeat what he had said to me and he repeated it, 'I give you my automobile, May, and I want my mother to have my business' or 'want my business to go to my mother.' That was about noon or a little after noon. Sister Louis Arthur was there in the room at the time and myself and Miss MacKenzie. Mrs. Eggington was in a couple of times, I know, but I really couldn't say really whether she was right there at that time. I don't know wheth-

er anybody remarked on it at that time but I know Miss MacKenzie repeated after him one time what he said. After repeating I still didn't think it was very legal so I said to Mr. Steeves, 'I will call an attorney.' He didn't say anything but from the expression on his face I could tell it was all right and I called Mr. Garvin of the firm of Hughes & Ramsey. My suggestion to call an attorney was made after Mr. Steeves' statement to Miss MacKenzie."

This nurse is corroborated by another nurse, who was engaged on the same floor and who came in from time to time, and by respondent, to whom the words were repeated. Respondent claims, and her claim is sustained by the verdict of the jury upon conflicting evidence, that she took and had charge of the automobile for several days thereafter and until it was taken over by the administrator, a brother of the deceased, who succeeded a special administrator who had been appointed immediately after the death.

The court submitted the law of gifts *causa mortis* to the jury as follows:

"First, the donor, or person making the gift, must presently give, that is he must not indicate an intention that he is going to give at some future time, or if he lives he will give, but must use words of present giving, 'I hereby give,'—not something in the future, it must be a positive gift at that time. In addition to that there must be an acceptance on the part of the person to whom the gift is made, and thirdly there must be a delivery."

We think there can be no doubt that respondent has sustained the burden put upon her by the court, that is, that she demonstrate her right by "clear, convincing and satisfactory proof," as to the first two propositions—present intent and acceptance. The real question is whether, under the facts, there was a delivery. The court further instructed upon this element:

"Now by delivery it is not meant that some inaccessible object has to be brought to the death bed and handed over. That is not what the law means. When things are present in the death chamber there must be a handing over of the

thing, but when the thing is bulky, absent, or somewhere else, there must be such a taking of dominion by the person to whom the gift is made as to indicate that they have assumed control of it. So in this case, you must be satisfied by a fair preponderance of the evidence that there was a present giving by the deceased, that there was an acceptance by the plaintiff in this case, and that she took such dominion as is consistent with the nature of the article given her, if there was one given to her. The question of delivery is to be determined having in view the nature of the gift. As I have already told you, where articles are of a bulky character so actual, manual delivery is impracticable, the actual gift in terms followed by an acceptance, and by acts of dominion and control on the part of the donee, is sufficient. It is unnecessary in such case that the property shall be actually moved. It is sufficient that the donor relinquishes all dominion over it to the donee, who assumes that dominion."

It is insisted that the facts are such that they will not bear the application of the rule laid down by the trial judge under the authority of *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857. Counsel cites that part of the opinion wherein the court said:

"While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis,* than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that the law now presumes against a gift, it certainly does not presume in its favor, but requires proof. *Lewis v. Merritt,* 113 N. Y. 386, 21 N. E. 141; *Devlin v. Greenwich Sav. Bank,* 125 N. Y. 756, 26 N. E. 744. The modern rule that, the intention of the donor having been ascertained, great latitude should be given in carrying out that intention, still demands a delivery as perfect and complete as the nature of the

property and the attendant circumstances and conditions will permit. *Blake v. Jones,* 1 Bailey's Eq. (S. C.) 141, 21 Am. Dec. 530; *Phinney v. State ex rel. Stratton,* 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119."

*In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204, is also relied on. In that case we said:

"In order to constitute a gift of personal property, three things are necessary: (a) An intention on the part of the donor to presently give; (b) a subject-matter capable of passing by delivery; and (c) an actual delivery at the time. *Hecht v. Schaffer,* 15 Wyo. 34, 85 Pac. 1056; *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857; *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003. The delivery must be such as will divest the donor of the present control and dominion over the property absolutely and irrevocably and confer upon the donee the dominion and control. *Basket v. Hassell,* 107 U. S. 602."

It will thus be seen that the crux of the case lies in the correct solution of the question whether a subsequent acceptance, the property not being present and of such character as to be incapable of actual manual delivery, is sufficient to satisfy the law.

The law favors the disposition of property by the owner before death. It therefore favors wills, and while it puts upon one claiming a gift *causa mortis* a heavier burden, yet when the intent is established to the satisfaction of the court, it will not permit the gift to fail where, by reason of his extremity or the location or character of the property, the donor cannot make an actual or symbolical delivery, if the donee has nevertheless acted upon the gift and has taken such possession as the character of the property will admit.

In *Ellis v. Secor,* 31 Mich. 185, 18 Am. Rep. 178, it was urged that the law regarded gifts *causa mortis* with disfavor and as against public policy, and that they should not be sustained where it can be avoided. The court said, on page 187:

"It is the duty of courts to enforce all lawful rights, so as to carry out the intention of the parties. That intention

should always be observed if lawfully expressed; and it is only incumbent on legal tribunals to be very careful to ascertain the facts. There is much room for frauds and mistakes in cases of this kind, and, therefore, care should be used to sift the evidence. But where there is no doubt about the facts, it would be a legal wrong and gross injustice to refuse to act upon them fairly and without hesitation."

In 14 Am. & Eng. Ency. Law (2d ed.), p. 1021, it was said:

"Where the articles are of a bulky character, so that actual manual delivery is impracticable, a declaration of gift by the donor in plain terms, followed by acts of dominion and control on the part of the donee, is sufficient, and it is not necessary in such cases that the property be actually moved; it is sufficient if the donor relinquishes all dominion over it to the donee."

In Thornton on Gifts and Advancements, § 145, it was said:

"Not only is the application of the rule requiring a delivery to be mitigated and applied according to the situation of the subject of the gift, but the conditions and intention of the donor at the time of making the gift must be considered; and this is especially true of a gift *causa mortis*. 'The intention of the donor,' says the Supreme Court of Indiana, 'in peril of death, when clearly ascertained and fairly consummated, within the meaning of well established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery. The rule which requires delivery of the subject of the gift is not to be enforced arbitrarily.' "

In *Waite v. Grubbe*, 43 Ore. 406, 73 Pac. 206, 99 Am. St. 764, a gift of money, buried by the donor, to his daughter was sustained although there had been no actual delivery. The court said:

"The taking of the money subsequently by her would not have been attended with the commission of a trespass, and the gift would assuredly have been complete if she had taken manual possession thereof during his lifetime."

The court then asks this question,

"Was the delay in this respect a fatal oversight on her part?"

And answers it as follows:

"She accepted the money when he made his declarations of the gift to her, and it was so understood between them. It seems to us, therefore, that the delivery was as perfect and complete as the nature of the property, the situation of the parties, and the circumstances of the case would permit."

There is much discussion in the books, but it is the common holding of the courts that, where the intent to bestow is obvious and clear and there is no evidence of fraud or undue influence, and the circumstances show that the donor has done all that, in his opinion, is necessary to do to accomplish his purpose, the intent of the donor will answer for the act of delivery. So that it is impossible to lay down a rule to cover all cases, and each case must be determined by its own peculiar facts and circumstances.

"The circumstances under which such gifts are made must of necessity be varied and infinite, and each case must be determined on its own peculiar facts and circumstances. The delivery may be actual or constructive, but it should be the best which the nature and situation of the property and the circumstances of the parties admit of." 12 Ruling Case Law 961.

"And, recurring again a moment to the essential qualifications of the gift, it is true that, in cases of gifts *causa mortis*, there must be a delivery of the thing given, and this is the rock upon which courts have so often divided. And it is also true that it must be as nearly an actual delivery to the donee as the circumstances of the case, and the nature and actual position of the donee and the thing given will permit. But, in the very nature of business transactions of this kind, this delivery must frequently be constructive. The nature and circumstances surrounding this case necessitated a constructive delivery. The subject of the gift was not available. The decedent did all in his power to deliver the money in the bank at Laconner to the appellant. So that, in justice and

common sense, it seems to us that the delivery was complete, and that the will of the deceased ought not to be thwarted by any technical construction or definition of delivery." *Phinney v. State ex rel. Stratton*, 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119.

If the property is of such a character and the circumstances of the parties are such that there can be no delivery, manual or symbolical, there may be a constructive delivery, depending upon the intent of the donor and the subsequent conduct of the donee. Our conclusion is that the rule of law requiring a delivery to sustain a gift *causa mortis* is satisfied.

The action being in form one of claim and delivery, the court instructed the jury:

". . . a verdict for damages for the detaining of it, that is an amount that will fairly compensate the plaintiff for the pecuniary damage suffered by being deprived of the use of the automobile by the defendant, if you find that the defendant deprived her of the use of it."

The witness testified that the fair rental value of the machine was one dollar per day. The respondent says of her intended use of the machine: "I intended to keep it for a little while or else rent it." It is contended that the court applied the wrong measure of damages; that it is apparent that respondent intended to sell the machine and that her damage would be the depreciation in value between the time of taking and the time of recovery. We think the testimony of respondent would hardly bear the construction put on it by appellant. One who has been unlawfully deprived of the use of property cannot be bound to fix with any great degree of definiteness his intention with respect to its retention or use. And it can make no difference in the application of the rule that the owner has never rented his property. Where a householder suffered the seizure of a piano at the hands of a tax collector, the court held that the proof of a rental value of ten dollars per month furnished the proper measure of damages. *Chauvin v. Valiton*, 8 Mont. 451, 20 Pac. 658, 3 L. R. A. 194.

The assessment of damages for the unlawful taking and detention of personal property calls for a sound discretion on the part of the trier of the facts.    Hence, where the facts are such that interest or difference in value would be improper, the value of the use is resorted to.    This rule is often combated by the suggestion that it is a false measure when the property has never been rented and its use is in a sense personal to the owner, but it applies nevertheless where the proof shows that the property has a usable value, not because the owner has used it for gain or profit, but because the law will presume that the wrongful taker has used the property to his own benefit and can pay the value of such use out of his gains and not out of his pocket.    The recovery of the value of the use of personal property having a usable value is amply sustained by the authorities.    Cobbey, Replevin (2d ed.), § 891; Shinn, Replevin, § 646; 34 Cyc. 1562.

Appellant further contends that, in any event, the damages for the loss of the use of the automobile date from the time of the presentation of a claim to the administrator.    The presentation of a claim may be a condition precedent to the maintenance of an action, but it does not create nor does it limit the cause of action.    A claim being presented, the cause proceeds as in ordinary cases, unaffected in any way by collateral facts or the procedure outlined in the probate code.

Judgment affirmed.

Ellis, C. J., Webster, Morris, and Chadwick, JJ., concur.