[No. 18471.　Department Two.　May 7, 1924.]

*In re Estate of* JENNIE WHITE, *Deceased.*

DONALD McINTYRE, *Appellant,* v. ANNIE MARSHALL *et al., Respondents.*[1]

GIFTS (10, 12)—CAUSA MORTIS—DELIVERY — EVIDENCE — SUFFICIENCY. The evidence of a gift *causa mortis* is within the rule requiring clear and convincing proof, which need not be beyond dispute or doubt, where it appears that the donor, being sick, signed a card giving a trustee access to and control over her safety deposit vault and instructed the trustee, in writing, in case of her death, to cash certain loans and send the proceeds to two designated sisters, and that the donor died of the existing sickness without having revoked the gift; and it cannot be objected there was no sufficient delivery.

SAME (10, 12). The fact that the trustee was appointed administratrix of the donor's estate and inventoried the property in question is immaterial, where this was done for her protection, she having advised the court of the facts at the outset.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered November 13, 1923, settling the final account of an administrator and distributing an estate, after a hearing upon objections thereto. Affirmed.

[1]Reported in 225 Pac. 415.

*Wright & Catlett,* for appellant.

*Stratton & Kane,* for respondents.

BRIDGES, J.—We feel confident that the facts of this case show a valid gift *causa mortis.*

For a number of years Jennie White and Anna B. McVicar were good friends. Prior to February 25, 1922, Mrs. White had been sick with pneumonia, and at that time she had only partially recovered. It was on that day she took Mrs. McVicar with her to the safety deposit vaults of the Title Trust Company, in Seattle, where she had a lock box. She then signed a card which authorized Mrs. McVicar to have access to, and control of, the contents of that box, and gave her a key thereto, at the same time requesting that, if anything should happen to her, Mrs. White, she desired that Mrs. McVicar should look after her affairs. At this time she was still an invalid, and it was her intention to go to British Columbia to be with one of her brothers and have him nurse her back to health if possible. A few days thereafter she arrived at her brother's residence. Her sickness continued and she grew worse. On March 15, and while she was still in British Columbia, she penned the following letter, or instructions, to Mrs. McVicar:

"In case of my death I authorize you to cash my five loans with the Title Trust Company and send it to my sister, Mary McDonald, Box 316, Strathroy, Ontario. (Signed) Jennie White.

"In case of my death I authorize you to cash both mortgages with F. M. Jordan & Co. and send to sister Annie Marshall, Ubly, Michigan. In both cases if dead to go to their children. (Signed) Jennie White.

"This will introduce to you Mrs. Annie B. McVicar, who will transact all business with F. M. Jordan & Co. (Signed) Jennie White."

18—129 WASH.

This letter was received by Mrs. McVicar in Seattle about March 17, 1922. Mrs. White's condition continued to grow worse and she died at her brother's home on April 1, 1922.

The "five loans with the Title Trust Company" are definitely fixed as certain notes and mortgages belonging to Mrs. White, which were negotiated for her by the trust company. The other two mortgages, designated as "F. M. Jordan & Co." mortgages, were loans which had been made by that company for her. All of these loans were in her safety deposit box at the time she wrote to Mrs. McVicar and at the time of her death.

The natural heirs of Mrs. White were several brothers and sisters and several children of a deceased brother or sister.

Mrs. McVicar was in due course appointed administratrix of the estate of Mrs. White. All of her surviving brothers and sisters except appellant, Donald McIntyre, and nieces and nephews, except two minors, executed an instrument authorizing the administratrix or the court to surrender over to Mrs. McDonald and Annie Marshall the securities mentioned in Mrs. White's letter to Mrs. McVicar.

The essential elements of a valid gift *causa mortis* are: (1) it must be made in view of approaching death from some existing sickness or peril; (2) the donor must die from such sickness or peril without having revoked the gift; (3) there must be a delivery, either actual, constructive or symbolical, of the subject of the gift to the donee or to some one for him, with the intention of passing title thereto, subject, however, to revocation in the event of recovery from the pending sickness.

The vital, although not the only, difference between a gift *causa mortis* and one *inter vivos* is that the

former may be revoked by the donor if he survive the pending sickness or peril, and does not pass an irrevocable title until the death of the donor, while by the latter the gift is irrevocable and vests an immediate title. In determining whether a gift *causa mortis* is valid, this court, in harmony with other courts, stresses the pending sickness, death resulting therefrom, an intention to give, subject to revocation if death does not ensue from the pending sickness, and a delivery of the gift. The testimony on these stressed points must be clear and convincing, but need not be beyond dispute or doubt. Whether a gift of this character is valid is largely a question of fact. 28 C. J. 622; *Varley v. Sims,* 11 N. W. (Minn.) 269, 8 L. R. A. (N. S.) 828; *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857; *Hamlin v. Hamlin,* 59 Wash. 182, 109 Pac. 382; *Phinney v. State ex rel. Stratton,* 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119; *Fauley v. McLaughlin,* 80 Wash. 547, 141 Pac. 1037; *Newsom v. Allen,* 86 Wash. 678, 151 Pac. 111; *MacKenzie v. Steeves,* 98 Wash. 17, 168 Pac. 50.

That there are in this case an impending sickness, death therefrom, and an intention to give and to vest the title, subject to revocation only in the event the donor lives through the pending sickness, there can, it seems to us, be no reasonable question. It is most strongly argued here that the gift fails because of want of delivery of the things given. Many years ago the rule of law in this respect was exceedingly strict and harsh, but it has now been softened so that only such delivery is required as the nature of the thing given and the circumstances under which it is given will permit, and so it is very generally held that the thing given may be delivered direct to the donee, or to some designated person for him, and the delivery may be either actual, constructive or symbolical. *Phinney*

*v. State; Hamlin v. Hamlin; Newsom v. Allen,* and *MacKenzie v. Steeves, supra.* In the last cited case we said: "If the property is of such a character and the circumstances of the parties are such that there can be no delivery, manual or symbolical, there may be a constructive delivery, depending upon the intent of the donor and the subsequent conduct of the donee."

But it is asserted the letter to Mrs. McVicar does nothing more than make her Mrs. White's agent, authorizing her as such to cash the mortgages and give it to her two sisters, and that the agency necessarily terminated at Mrs. White's death. We do not so read the letter. Its evident purpose was to make Mrs. McVicar the agent, or trustee, of the donees. Indeed, under circumstances such as exist here, it has often been held that the law will presume, unless the contrary appears, that the person to whom the delivery is made takes as the trustee of the donee. *Varley v. Sims, supra;* 14 Am. & Eng. Ency. Law, 1061; 28 C. J. 640; *Devol v. Dye,* 123 Ind. 321, 24 N. E. 246.

The facts of this case meet our idea of a clear and convincing showing of a gift *causa mortis.*

Some complaint is made because Mrs. McVicar, as administratrix, inventoried the property here involved and carried it through the estate up to the point of distribution, when she obtained an order of the court holding the gifts to be valid. The wisdom of her conduct in so doing is shown by this litigation. While she did inventory the property, she at the outset advised the court of the situation with reference thereto, as it has been here detailed. She desired, and justly so, for her protection, a decree of some court adjudging the validity or invalidity of the gift in question. Only in this manner could she be protected. The appellant

has had his day in court and is not in position to complain of the conduct of Mrs. McVicar in this respect.

We think the judgment was right, and it is affirmed.

MAIN, C. J., FULLERTON, PEMBERTON, and MITCHELL, JJ., concur.