[No. 20627.  Department Two.  October 5, 1927.]

MARY STEUER, *Respondent*, v. MINNIE LANG, *as Executrix, Appellant.*[1]

[1] GIFTS (10, 12)—CAUSA MORTIS — DELIVERY — EVIDENCE.  A gift *causa mortis* is not evidenced by letters to the donor's sister, written while he was in a hospital about to undergo an operation, to the effect that, before he was married he had $6,800 "of which you shall have $5,000," directing that it be taken from a $15,000 note and mortgage, part of very considerable estate belonging to himself and his wife, stating that of such note, "you are to receive $5,000" and that the letters were "to show" and so have "no difficulty" in getting that amount from the estate, which would be ample to provide for the wife (HOLCOMB, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered April 9, 1927, upon findings in favor of the plaintiff, in an action to establish a gift, tried to the court.  Reversed.

*Kimball & Blake*, for appellant.

*Graves, Kizer & Graves*, for respondent.

FRENCH, J.—On May 6, 1926, John Lang was ill in a hospital at Rochester, Minnesota.  On that day he wrote two letters to his sister, Mary Steuer, at .................. They were as follows:

"Rochester, Minn., May 6, 1926.
"Dear Sister:

"This is to let you know that we have been here two weeks and that I will be operated on the 7th of May for throat trouble.  The doctors say that it will not be dangerous, but they don't know everything.  Before I was married I had $6,800, of which you shall have $5,000.

"In case anything should happen that I should die, I had this understanding with my wife some time ago.

'Reported in 259 Pac. 722.

A $15,000 mortgage from the Inland Products Company in Spokane is due January 1, 1927, and from this you shall receive $5,000. If Joe should be hard pressed, you would be able to help him. Enclosed you will find a letter from Conrad. You may have it for a keepsake. We all hope for the best.

"Best regards to you and your family members.

"Your brother, JOHN LANG.

"508 Cedar Street, Spokane, Wash."

"Rochester, Minn., May 6, 1926.

"Dear Sister:

"I have written this so that you will have something to show. There will always be $75,000 or $85,000 worth of property for my wife and Otto and therefore you should have no difficulty in obtaining the $5,000. The note you hold against me for $1,000 has nothing to do with this and naturally must be paid separately.

"My wife always says she helped earn everything, but the $6,800 I myself had and earned it, therefore I can do with it what I please.

"My wife says she will let you know how the operation comes out. Your brother, JOHN LANG."

At the time these letters were written, John Lang was the owner of a note in the sum of $15,000 executed by Inland Products Company in his favor and secured by a mortgage of $30,000, the other $15,000 being represented by a note of $15,000 due to one Alvin Schmidt, who sold his note and interest in the mortgage to the Spokane Savings & Loan Society, which society in compliance with the law had deposited them with the auditor of the state of Washington. The note due Lang was kept at the time of the writing of the above letters in a safe deposit box in the Exchange National Bank of Spokane.

On May 16, 1926, ten days after the letters were written, Lang died. His wife took possession of the note from the bank deposit box under the authority conferred on her as executrix of the last will and testament of John Lang. Thereupon Mary Steuer

filed. her claim with the executrix, who refused payment. Suit was then brought alleging that John Lang had, under the apprehension of death, delivered and assigned to her a proportionate share of the mortgage and note equal to $5,000, which gift the plaintiff had accepted. Upon trial, the court found that, under the apprehension of death, he wrote the letters we have set out; that he died from the operation referred to, and concluded, as a matter of law, that John Lang gave and delivered a $5,000 interest in and to the note and mortgage to his sister.

. [1] The defendant appeals, contending that there is no proof of intention to give other than at death, or, in the alternative, if there was an intention to presently give, it was not consummated by any delivery. It seems to us that the decision in this case can be safely predicated upon the interpretation of the letters, as to whether they evidenced an intention to presently give, or merely express an intention that the beneficiary shall receive at the donor's death. We have stated the rule to be:

"From these cases, it is clear that, in order to constitute a gift *causa mortis,* there must not only be an intention to make the gift, but there must be something done to complete the gift. The donor must not only signify his purpose, but he who asserts title by gift must prove delivery, either actual or symbolical 'by evidence that is clear, convincing, strong and satisfactory.' " *Fauley v. McLaughlin,* 80 Wash. 547, 141 Pac. 1037.

Taking the essential words of the first letter, we find a statement that "before I was married I had $6,800 of which you shall have $5,000. . . . A $15,000 mortgage from the Inland Products Company in Spokane is due January 1, 1927, and from this you shall receive $5,000." What is there in these words to indicate a present gift? There is nothing more than a

desire that, in case of death, the beneficiary shall receive a certain sum of money payable from a designated portion of his estate. There is here no writing which would authorize the beneficiary to take possession of the note and mortgage, or exercise any control over it whatever.

It has been urged by respondent that no actual delivery is required, because the note and mortgage were not something that could be, under the circumstances, capable of more than a constructive or symbolical delivery. But let us suppose that the note and mortgage were each in the exact sum of $5,000, and were in the possession of some one who was merely holding as a gratuitous bailee without any claim thereon. Would anyone contend that these writings would authorize or justify the beneficiary in demanding the note and mortgage? We think not.

But, it is said, the second letter shows a present gift. The words thought to convey this idea are: "I have written this so that you will have something to show," and respondent claims these words are symbolical and intended to indicate a passing of $5,000 of the note and mortgage to the donee. But this is hardly a fair construction. A more common, ordinary and usual construction would be, when taken in conjunction with the first letter, "I have written this so that you will have something to show my wife or the court that I want you to have $5,000 out of my estate, and that it is to be paid from the proceeds of the $15,000 note and mortgage." That this is so is made clear by the next sentence. "There will always be $75,000 or $85,000 worth of property for my wife and Otto and therefore you should have no difficulty in obtaining the $5,000." This indicates a belief that, if there was not a large amount of property in the estate, there might not be sufficient for her to secure the amount he

wished her to have. But, of course, it could make no difference whether there was a large sum in the estate or not, if this was a present gift to the sister.

The writings, taken as a whole, indicate only a desire that respondent should receive $5,000 of his estate. This could only be effectually done by a will or codicil duly executed.

The judgment is reversed.

MACKINTOSH, C. J., TOLMAN, and PARKER, JJ., concur.

HOLCOMB, J. (dissenting)—There is no doubt that the facts in this case fully sustain the findings of the trial court that, "under the apprehension of death, Lang wrote the letters set out [in the majority opinion]; that he died from the operation referred to;" which findings, in my opinion, sustain the conclusion of law by the trial court that Lang gave and delivered a $5,000 interest in and to the note and mortgage to respondent. To my mind, there was an intended gift *causa mortis.* There was as complete a delivery of the thing given as was possible under the circumstances. The nature of the thing given and the situation of the parties did not permit of actual delivery. The parties were at a great distance apart; the giver was at a great distance from his property. The property itself was not in his own personal custody, but was in the custody of others. It was impossible to deliver either money, or the proceeds of the property referred to, to the donee. Lang supposed that he had fully accomplished his intended purpose. Of course, we regard with favor the right to dispose of one's own property as he will and when he will. *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857. And where the circumstances show that the donor has done all that, in his opinion, is necessary to accomplish his purpose,

the intent of the donor will answer as an act of delivery. *MacKenzie v. Steeves,* 98 Wash. 17, 167 Pac. 50.

When the circumstances were such that none but a constructive delivery could be made, the question of whether the delivery was sufficient is one of justice and common sense, and the will of the deceased should not be thwarted by any technical discussion of definition of delivery. *Phinney v. State ex rel. Stratton,* 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119.

In my opinion, this case falls within the class of cases illustrated by *In re White's Estate,* 129 Wash. 544, 225 Pac. 415, and *Phinney v. State ex rel. Stratton, supra,* and not within that class of cases cited in the majority opinion.

The findings, conclusion and judgment of the trial court were right and should be affirmed. For these reasons, I dissent.