[No. 12661.   Department One.   August 16, 1915.]

JOHN NEWSOME, *as Administrator etc., Appellant,* v. KATE ALLEN *et al., Respondents.*[1]

APPEAL—REVIEW—PARTIES ENTITLED TO ALLEGE ERROR—WAIVER. Where, in a law action, appellants demanded consideration of the case as one of equitable cognizance, which was granted and acquiesced in by respondent, error cannot be predicated on such action by the court.

GIFTS — CAUSA MORTIS—DELIVERY—SUFFICIENCY. There was no sufficient delivery of checks, drafts, notes and certificates of deposit, contained in a safety deposit box, to constitute a valid gift *causa mortis*, where the donor and her sister, the donee, visited the vault and took the box and contents into a booth, and replaced the papers, which were not so bulky that they could not have passed from hand to hand, and the donor then informed the manager that she was going to a hospital for an operation, and in case she did not come back, the contents "are to be delivered" to the donee, stating to her "here are the keys; in case I do not come back, you know what to do;" and informing the manager that she made the donee "a partner in the box"; since the delivery was not as perfect and complete as the nature and circumstances of the property permitted.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered October 22, 1914, upon findings in favor of the defendants, in an action by an administrator to recover personal property as assets of an estate, tried to the court and a jury. Reversed.

*Raymond J. McMillan* and *E. K. Murray,* for appellant.

*W. C. Elliott* and *Jay E. Taylor,* for respondent.

Holcomb, J.—Appellant is the widower of Anna J. Newsome, who died at Tacoma, Washington, July 14, 1913, and

[1]Reported in 151 Pac. 111.

is the administrator of her estate, and commenced this action as such to recover from respondents specific personal property as follows, to wit:

(a) Manager's check No. 8297, The Bank of California, N. A., Tacoma, payable to order of Anna J. Newsome, for $60, dated Tacoma, Wash., February 6th, 1913;

(b) Real estate coupon mortgage note, J. W. Clark and wife, Jenette Clark, to Anna J. Newsome, dated Tacoma, Wash., February 2d, 1911, due February 2d, 1914, for $1,500, payable to the Bank of California, N. A., Tacoma, with interest at eight per cent, payable semi-annually, with coupons due August 2d, 1913, February 2d, 1914, attached;

(c) Certificate of deposit, No. 51879, The Bank of California, N. A., Tacoma, dated Tacoma, Wash., September 8th, 1910, for $4,140, payable to Mrs. A. J. Weber, or order;

(d) Certificate of deposit, No. 54425, The Bank of California, N. A., Tacoma, dated Tacoma, Washington, June 4th, 1912, for $690, payable to Mrs. A. J. Weber, or order;

(e) Check of city of Tacoma, Treasurer's office, No. 3827, dated Tacoma, Washington, November 21st, 1911, for $1,000, payable to order of A. J. Newsome, and drawn on Fidelity Trust Company, Tacoma;

which property he alleges was the community property of himself and decedent, and was wrongfully taken from the estate by respondent, Kate Allen, who claimed to act in behalf of herself and sisters.

Respondents admit that they took the described property, but assert that it was the separate property of decedent, who was their sister, and that she gave the same to them in apprehension of death and during her last illness, and that they hold title thereto under a valid gift *causa mortis.*

The two questions of fact under the pleadings, and which were submitted to the jury, were: (1) The separate or community character of the property; and (2) whether or not a valid gift thereof had been made by the decedent to respondents.

The jury found: (1) That the checks for $60 and $1,000 and the note for $1,500 were the community property of appellant and decedent, and the certificates for $4,140 and $690 the separate property of decedent; and (2) that neither the property so found to be separate nor the property found by them to be community was given to the respondents. The court, proceeding upon the theory that the case was one in equity and the verdicts of the jury merely advisory, disregarded such verdicts and made its findings of fact, wherein it adopted the verdict of the jury as to the separate and community character of the property, but set aside the verdict of the jury that neither the securities found to be community property nor the securities found to be separate property were given to the respondents. The appellant moved that the court set aside that portion of the verdict finding the certificates of deposit for $4,140 and $690 were the separate property of the decedent, which motion was denied. It then entered its final judgment, adjudging respondents to be the sole owners of a one-half interest in the checks for $60 and $1,000, and the note for $1,500, and all the certificates of $4,140 and $690. It is from this portion of the final judgment that this appeal is taken.

Appellant and decedent were married September 22, 1902. Prior thereto, decedent was the widow of John Weber, who died in December, 1892, leaving her his estate, together with $2,000 life insurance. The decree of distribution, of which decedent was executrix, orders the distribution to her of $5,265. It does not appear whether or not the $2,000 insurance money was included in this sum. At the time of his death, Weber owned the furniture in, and conducted, the Lafayette Hotel at Tacoma, Washington, which decedent continued to conduct for eleven months after his death and then sold for $800.

There is some contention by appellant that the action is a law action, and that the findings of the jury are conclusive as to all proper issues of fact, even though special in form.

The parties have reversed their positions. Appellant objected to a jury below because the case was of equitable nature, while the respondents insisted upon a jury and declared it to be a law action. In its origin and nature, it was essentially a law action to recover specific personal property. Rem. & Bal. Code, § 314 (P. C. 81 § 205). The answers did not set up any equitable defenses or change the character of the case. But the appellant demanded the consideration of the issues as of equitable cognizance, which was granted by the trial court and acquiesced in by the respondents. The parties cannot now, therefore, be heard to the contrary, whereby either might derive an advantage over the other. So far as the parties are concerned, the case stands as one of equitable jurisdiction.

The probable origin of the property, the course of dealing therewith by both appellant and decedent, and the declarations concerning the same by, and estoppels of record against, appellant undoubtedly justify the finding of the jury that the certificates for $4,140 and $690 were the separate property of decedent, who would therefore have the sole right of disposition thereof by gift or bequest. As to her right to dispose of her interest in the community personalty in controversy by gift, we express no opinion.

Having the legal right and power of disposition of the certificates for $4,140 and $690, did the decedent make a valid gift *causa mortis?* The question is determined by the intention and the character of the tradition or delivery of the property. The circumstance of possession by the donee is not sufficient to establish either delivery or intention to give.

In *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857, these observations were made:

"What constitutes a gift . . . within the legal definition . . . is essentially a matter of evidence and not of law; and each particular case must depend upon its own circumstances, and must be such as to authorize the belief that a gift was intended. Thornton, Gifts, § 217.

"Anciently, gifts were viewed with suspicion by the courts, as being fruitful sources of fraud, perjury, and litigation. They were disfavored by the law, and almost conclusive evidence was required to sustain them. Such strictness does not now obtain. The law favors every man's right to dispose of his property as and when he will, and when the intent and the act are clearly established by competent evidence, favors the disposition by gift as well as though he had undertaken to dispose of his belongings by the stricter formality of a written disposition.

"But the courts have never departed from their vigilance in holding that something more is required to constitute a gift, either *inter vivos*, or *causa mortis*, than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. The modern rule that the intention of the donor having been ascertained, great latitude should be given in carrying out that intention, still demands a delivery as perfect and complete as the nature of the property and the attendant circumstances and conditions will permit. *Blake v. Jones*, 1 Bailey's Eq. (S. C.) 141, 21 Am. Dec. 530; *Phinney v. State ex rel. Stratton*, 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119."

On this footing it has been adjudged in some instances that delivery of the key was sufficient delivery for a valid *donatio mortis causa* of money or documents locked in a trunk or other receptacle, not within the presence or immediate control of the donor. *Cooper v. Burr*, 45 Barb. (N. Y.) 9; *Marsh v. Fuller*, 18 N. H. 360; *Jones v. Brown*, 34 N. H. 439; *Thomas v. Lewis*, 89 Va. 1, 15 S. E. 389, 37 Am. St. 848, 18 L. R. A. 170; *Phipard v. Phipard*, 55 Hun 433, 8 N. Y. Supp. 728; *Pink v. Church*, 60 Hun 580, 14 N. Y. Supp. 337.

In *Hatch v. Atkinson*, 56 Me. 324, 96 Am. Dec. 464, it was said:

"But it [the law] does require clear and unmistakable proof, not only of an intention to give, but of an actual gift, perfected by as complete a delivery as the nature of the property will admit of.  It not only requires the delivery to be actual and complete, such as deprives the donor of all further control and dominion, but it requires the donee to take and retain possession till the donor's death.  Although the delivery may have been at one time complete, yet this will not be sufficient, unless the possession be constantly maintained by the donee.  If the donor again has possession, the gift becomes nugatory."

The above statement may be somewhat too strong as regards delivery and possession, for under the relaxed modern rule, delivery may be constructive, if as perfect and complete as the nature, condition and circumstances of the property will permit, and so, also, may possession by the donee be constructive, but must also be as perfect and complete as the nature, condition and circumstances of the property will permit.

In the present case, on July 9, 1913, the donor and donee went into the vault wherein was the safe deposit box containing the certificates of deposit and securities in controversy; they took the box therefrom and took it into a booth; they were both in the immediate presence of the property, which was not so bulky and unwieldy that it could not have passed from hand to hand.  They then replaced the contents in the box, replaced the box in the vault, went to the desk of Mr. Bonney, the manager, when the donor said that she was going to the hospital for an operation, and "In case I don't come back, the contents (of the box) *are to be delivered* (Italics ours) to Mrs. Allen and my sister."  After this statement she turned and faced Mrs. Allen and laid the keys on the counter and said: "Kate, here are the keys; in case I don't come back you know what to do."  Mr. Bonney also testified that when they entered the place, Mrs. Newsome introduced Mrs. Allen as her sister and made her "a partner in the box."  Five days later Mrs. Newsome died in the hospital.

Although it may be justly inferred that Mrs. Newsome had good reasons to desire and intend to reward her sister for attentions and care during the ill health of Mrs. Newsome by giving to her personal property, and fully expressed such an intention, she did not, when *in periculo mortis*, deliver the property, either actually or constructively. At most she only partially delivered possession constructively. The property was deposited in a safety deposit box held in partnership by herself and her sisters. She instructed that, in case she did not come back, the contents of the box *were to be* delivered to her sisters. The contents were of such nature, and the conditions and circumstances were such, that they could have been then and there delivered into the actual possession of Mrs. Allen. They were not. In the contingency of Mrs. Newsome's death, of which she was then in peril, they "were to be delivered." This was not enough. There was no sufficient delivery to constitute a valid gift *causa mortis*. The jury correctly so found. Consequently the appellant is entitled to possession of all the personal property in controversy, to administer upon same and distribute according to law.

The judgment of the court is therefore reversed, with directions to grant judgment in favor of appellant with costs.

MORRIS, C. J., CHADWICK, PARKER, and MOUNT, JJ., concur.