[No. 13401. Department One. April 29, 1918.]

JUDSON P. WILSON, *as Executor etc., Appellant*, v.
ORVIS B. JOSEPH *et al., Respondents.*[1]

GIFTS—CAUSA MORTIS—DELIVERY—EVIDENCE — SUFFICIENCY. The evidence warrants the finding that a. diamond ring and a diamond brooch were delivered to the defendants as gifts by the deceased at the time of her last sickness, where it appears without dispute that she had great affection for the defendants, and several times expressed the intention to make the gifts, and on a previous occasion on submitting to an operation actually made the delivery, but they were later returned, and while at the hospital on the last occasion, the defendants came to her upon a telephone request, and received possession of the jewelry in the presence of the deceased.

Appeal from a judgment of the superior court for King county, Smith, J., entered December 2, 1915, upon findings in favor of the defendants, in an action by an executor to recover property alleged to belong to the estate of a decedent, tried to the court. Affirmed.

*Vince H. Faben,* for appellant.

*Ryan & Desmond,* for respondents.

PARKER, J.—Judson P. Wilson, as executor of the estate of Mary H. Wilson, his deceased wife, claims, as belonging to her estate, and seeks recovery of, jewelry consisting of a diamond ring and a diamond brooch, from Orvis B. Joseph and Nettie M. Joseph, his wife, which jewelry is in their possession and claimed by them as a gift from Mrs. Wilson made by her to them a short time prior to her death. The issues were raised by petition filed in the superior court for King county by Wilson in the probate proceedings, and by the answer thereto of Joseph and wife. Trial upon the merits was had upon the issues so raised, as though it were an independent action, and resulted in findings

[1]Reported in 172 Pac. 745.

and judgment in favor of Joseph and wife, adjudging them to be the owners of the jewelry, from which the plaintiff has appealed to this court.

The jewelry in question is of the value of approximately $1,000. The jewelry was Mrs. Wilson's separate property. She possessed a considerable amount of property of which this jewelry was a comparatively small portion. For many years prior to her death, Joseph was a very intimate friend of Mrs. Wilson. He had lived in the Wilson family as a boy, and, while not a blood relative, Mrs. Wilson had such regard and affection for him that she often referred to and addressed him as her son; and after his marriage, which occurred a few years prior to her death, she also had great regard and affection for his wife. This was evidenced by remarks to her friends, of which the following is one, "I think as much of Nettie and Orvis as if they were my own." About a year prior to her death, she said to Joseph, "Son, I want you to remember that when I die this ring is yours and this pin is Nettie's." This was said relative to this jewelry, in the presence of a witness who testified to that fact and who has no pecuniary interest in the outcome of this controversy. This fact is not disputed by any other witness. Mrs. Wilson had, on one occasion when she went to a hospital for treatment, evidently fearing that she might not recover, actually placed this jewelry in the possession of Joseph and his wife, intending it should be theirs in case she did not recover. It was, however, returned to her upon her recovery from that treatment. Thereafter and about four months prior to her death, as Joseph testified, Mr. Wilson said to him, "I understand that mother is going to will her diamonds to you and Nettie." On July 19, 1915, Mrs. Wilson went to a hospital for treatment, and on the following day, in response to a telephone call from the hospital (at whose

instance it does not appear), Joseph and wife called upon her there, when they received possession of the ring and brooch in her presence, which have been in their possession ever since. Apparently no one else was then present.

The trial court refused to hear testimony from either Joseph or Nettie as to what Mrs. Wilson then said, evidently having in mind the statutory prohibition against a party testifying "in his own behalf as to any transaction had by him with or any statement made to him by any such deceased person." Rem. Code, § 1211. So that, as to what occurred there, we have the positive evidence only of the fact that Joseph and his wife then acquired possession of the jewelry in Mrs. Wilson's presence. We think there is enough in the record to warrant the conclusion that Mrs. Wilson then believed that her recovery from her sickness was unlikely. She died without having left the hospital, on August 27, 1915.

It is contended on appellant's behalf that the facts proven do not in law support a gift of the jewelry by Mrs. Wilson to Joseph and wife as claimed by them. We cannot agree with this contention. That there was an actual delivery of the jewelry to Joseph and wife by Mrs. Wilson at the time they obtained possession of it on July 20, 1915, and that she then delivered it to them with the intent to give it to them, we think is a conclusion well supported by the evidence, though we have no direct evidence of what she actually said or did at that time. Her regard and affection for Joseph and his wife, and her previously clearly evidenced intentions, there being not the least suspicion cast upon Joseph and his wife suggesting wrong on their part in acquiring possession of the jewelry, we think calls for the conclusion that they received it at the hands of Mrs. Wilson, on July 20, 1915, as a gift from her.

We think no decision rendered by this court is out of harmony with this conclusion, and that the views expressed in the following of our decisions support it: *Phinney v. State ex rel. Stratton,* 36 Wash. 236, 78 Pac. 927, 68 L. R. A. 119; *Davie v. Davie,* 47 Wash. 231, 91 Pac. 950; *MacKenzie v. Steeves,* 98 Wash. 17, 167 Pac. 50.

It is further contended that Mrs. Wilson was mentally incompetent to make such a gift on July 20, 1915. The evidence is quite voluminous on this question. We have examined it with care as presented in the abstracts prepared by counsel, and are quite convinced that the trial court correctly held that she was then mentally competent. We think it would be unprofitable to review the evidence in detail in this opinion.

The judgment is affirmed.

ELLIS, C. J., WEBSTER, MAIN, and FULLERTON, JJ., concur.