[No. 19615. Department One. August 18, 1926.]

## In the Matter of the Estate of JOHN HILDEBRAND, *Deceased.*[1]

[1] GIFTS (12)—CAUSA MORTIS—EVIDENCE—BURDEN OF PROOF. The burden of proof to sustain a gift *causa mortis* is on the donee.

[2] SAME (12)—CAUSA MORTIS—EVIDENCE—SUFFICIENCY. Findings of want of capacity to make a gift *causa mortis* are sustained, where it appears that the donor was over eighty years of age, bedridden for a week, and suffering from chronic interstitial nephritis, complicated with uremia, which experts stated frequently produces mental confusion, which he had manifested in various ways, and that he made the alleged gift shortly before he died while in that condition, two experts stating their opinion as to his want of capacity upon hypothetical facts.

[3] FORGERY (11)—SIGNATURE OF DECEDENT—EVIDENCE—SUFFICIENCY. Findings that a decedent's signature to a written instrument, making a gift *causa mortis*, was a forgery are sustained where it is apparent that it was a dim tracing made over a genuine signature, without indentation on the paper, supported by the opinion of competent experts that it was a tracing.

[4] GIFTS (7)—CAUSA MORTIS—EVIDENCE—SUFFICIENCY. Findings that no gift *causa mortis* was made to a daughter, are confirmed by proof that, to obtain possession of decedent's securities in a bank, the daughter concealed the fact of death and made affidavit that she was the only child and heir when there were three other children and death had already occurred.

[1]Reported in 248 Pac. 390.

[5] Appeal (451)—Review—Harmless Error—Rulings in Cases Tried Without a Jury.  Error in the admission of evidence in a case tried to the court is harmless.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered June 19, 1925, upon findings in favor of the plaintiff in an action for the recovery of funds belonging to a decedent's estate, tried to the court.  Affirmed.

*M. E. Mack* and *George M. Ferris,* for appellant.
*Lund & Dodds,* for respondent.

Holcomb, J.—This action was brought by the Union Trust Company of Spokane, as administrator of the estate of John Hildebrand, deceased, to recover from the appellant Mary Alice Beebe and the Washington Trust Company, the sum of $17,873.12, which was alleged to have been on deposit in a savings bank at the time of Hildebrand's death, and was therefore the property of his estate.  It was also alleged that the deceased was mentally unsound and that appellant, Mrs. Beebe, a daughter of deceased, had through the exercise of fraud, duress and undue influence, obtained from the deceased on March 27, 1923, his savings account pass book in the Washington Trust Company, and that, in furtherance of the scheme to obtain the savings deposit, she and her agents forged the name of the deceased to the pass book below what purports to be a transfer of the funds to her, and also forged his signature to a savings account receipt directed to the Washington Trust Company, and thereby wrongfully secured possession of the savings account on March 28, 1923, the date of the death of Hildebrand.

Appellant answered these allegations, and alleged that on March 27, 1923, the deceased was at her home in Spokane, and that he was, in every respect, of testamentary capacity, competent and able to transact and

conduct his own business affairs; that, at the time, he believed he would not live long, and was very desirous, eager and anxious, to give to appellant whatever money he had in the Washington Trust Company, and therefore made, executed and delivered to her an instrument authorizing and directing the Washington Trust Company to deliver the amount due him from it to appellant; that such authorization was dated March 27, 1923, and was for the sum of $17,355.75, and interest on that amount to the date thereof; that on the same date, and for the same purpose, the deceased made, executed and delivered to appellant a writing as follows:

"March 27, 1923
"Washington Trust Company
    "Please transfer my savings account to my daughter Mary Alice Beebe.        John Hildebrand."

That the above order and writing and the pass-book were personally delivered by Hildebrand to appellant; that, at the time of the delivery of the writings, deceased believed that he was soon going to die and it was his intention that, in the event of his death due to the illness then existing, the money above mentioned should be absolutely and unqualifiedly the property of appellant; that thereafter on March 28, 1923, John Hildebrand died; that, at all times preceding the date of his death, he was a sound man, physically and mentally, and was well able to transact his own business and did so transact his own business at all times, and no one was ever necessary, or called upon by him, to in any manner aid or help him in the transaction of his business; that, for a long time prior to his death, the greatest love and affection had existed between deceased and appellant, and such condition did not exist between deceased and any other member of his family; that, on many occasions prior to his death, he earnestly stated that it was his intention, prior to his death, to

give to appellant all his property and money, and that he did not desire or wish any other member of his family, or any one else, to have any interest or receive any portion thereof; that, to effect such purpose, deceased made, executed and delivered to appellant the instruments above mentioned.

These allegations were put in issue by reply of the administrator. The trial court, after hearing and examining all the testimony and evidence, found and adjudged in favor of the administrator.

On appeal, sixteen errors are assigned by appellant, all involving the findings of fact and conclusion of law made by the trial court; with one exception as to the admission in evidence of a former conviction of crime of a witness named Beebe, the husband of appellant. The sole contention of appellant is that the evidence in the record clearly preponderates against the findings made by the trial court.

The testimony and exhibits have been earnestly and carefully studied and considered. The trial court, after the conclusion of the trial, very ably analyzed and summarized the evidence in the case, resolving it in favor of respondent.

[1] To sustain the alleged gift *causa mortis*, the burden is upon the appellant, the donee. *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857; *Newsome v. Allen*, 86 Wash. 678, 151 Pac. 111.

[2] There is evidence in the case, favorable to appellant, as to the mental competency of John Hildebrand at the time the alleged transfer of the savings account was made. There is also strong and convincing evidence to the contrary, adduced from witnesses who had known the deceased in the localities where he had lived in Idaho, Nez Perce and Lewiston, as long as twenty-five or twenty-six years before his death. This evidence was summarized into a hypo-

thetical question which was submitted by respondent to experts of very high qualifications on mental disorders. It is as follows:

"A man 82 or 83 years of age, or thereabout, of limited education, who had followed blacksmithing and farming during his lifetime, and was without any occupation for about eight years before his death, and who for upwards of a year before his death was unable to recognize old friends, would inquire whether or not such friends, whom he had recently seen, were dead; would relate incidents of early days and then repeat immediately the same incidents as though he had not related them before; was growing physically feeble and childish but stated that he intended to resume his former trade of blacksmithing when manifestly not able to do so; for about a week prior to his death was bedridden, and on numerous occasions mumbled to himself, would go through the motions and speak as though he was playing at cards with a friend, and the person with whom he indicated he was playing had for some time, to his knowledge, been dead; on the 27th day of March, 1923, he was taken from his bed in the hotel in Lewiston, Idaho, and with assistance placed on a train and brought to Spokane, arriving there at about 2:30 P. M., when he was removed to a room and placed in bed. He died the following morning about six or seven o'clock of chronic interstitial nephritis complicated with uremia; after arriving in Spokane it is claimed that he made a gift to his daughter of all his property, being about $17,000, which was deposited in a Spokane bank, by signing an order on said bank and also signing a bank pass-book."

In answer to that question, one of the experts testified that in his opinion, under the circumstances and conditions as stated, the man had not the mental capacity to formulate an intent to, comprehend its significance, and voluntarily, make a gift of money to a daughter to the exclusion of all his other children. The other expert witness also testified that, under the

circumstances and conditions shown, a man had not the mental capacity to know and intend such disposition of his property. The experts also stated that chronic interstitial nephritis is an inflammation of the kidneys, which, when chronic, attacks the connective tissues. Uremia is the toxic manifestation of that disease; that is, the symptoms which the patient manifests which are the result of the poison in the system; that uremia frequently does produce a condition of mental confusion in an elderly person and one who had manifested symptoms of senile decay; it would aggravate it and increase the symptoms of mental disorder. Even the physician employed by appellant to attend the deceased on the evening of March 27, at about 6:30, and who stated that, so far as he could ascertain at that time, the mentality of deceased was average for one of his age and health, yet, on cross-examination testified that if the patient had been playing an imaginary game of cards with a person who had, to the knowledge of the patient, died some time before, it would indicate a lack of mental capacity; and relating one incident repeatedly would indicate a loss of memory.

The trial judge, in analyzing this evidence, including that of the attending physician for appellants who qualified his own evidence, found that, at the time the alleged transfer was made of the savings account, deceased was not of sufficient mental capacity to make disposition of his property.

We are thoroughly convinced that the evidence in this record preponderates in support of the findings of the trial judge as to the mental competency and testamentary capacity of deceased.

As to the degree of mental capacity required to make a valid gift *causa mortis,* in addition to the cases

heretofore cited, see our cases of *Rathjens v. Merrill,* 38 Wash. 442, 80 Pac. 754; *In re Wetmore's Estate,* 44 Wash. 567, 87 Pac. 1151; *In re Tresidder's Estate,* 70 Wash. 15, 125 Pac. 1034; *Points v. Nier,* 91 Wash. 20, 157 Pac. 44, Ann. Cas. 1918A 1046; *Pond's Estate v. Faust,* 95 Wash. 346, 163 Pac. 753; *Murphy v. Murphy,* 98 Wash. 548, 168 Pac. 175.

[3] The above determination is sufficient to nullify the alleged gift. On examination of the record, however, we are fairly convinced that the trial judge was right, also, as to the forgery of the transfer of the savings account. No one can examine the instruments without being satisfied that the signatures to the instruments are tracings made over some other genuine signature through a carbon sheet. Competent experts testified that they were such tracings. Juxtaposed with certain genuine signatures in the record, they are identical in formation and spacing. They are very dim, show no indentation in the paper, and the only fresh mark is the dot over the letter "i" in the surname in each instance. Both signatures show the slight blurring that is made when transferring through carbon.

Upon the latter issue we are satisfied that the trial court was right in finding that the signatures in question are forgeries.

[4] Other side-lights upon the case are shown in the record, such as the concealment of the death of Hildebrand from his three other living children from March, 1923, until about October, 1924, when one of the children began an investigation in Idaho and discovered the fact of his death; there is also the fact that appellant stated to the bank, when she presented the passbook and receipt to it, that her father was not dead but that she feared he would die soon, and that she was

his only child and sole heir. Upon receiving this information from her the bank officers required her to, and she did, execute an instrument under oath before a notary public, declaring that she was the daughter, only child and sole heir of deceased, together with other matters to protect the bank. The passbook and receipt, or order, were presented to the bank at 11:00 a. m., on the same day that Hildebrand died, at 7 o'clock in the morning. There were, in fact, three other children and heirs at law surviving deceased.

[5] The last error claimed by appellant is in admitting the evidence of a former conviction of witness Beebe. The objection to this evidence was the great lapse of time since the conviction, so that it could not reasonably bear on his present character. 40 Cyc. 2610-F. Even though this be conceded to be a technical error, it is not sufficient to justify a reversal in a case tried to the judge without a jury, as we have consistently held from earliest times.

The judgment is affirmed.

Tolman, C. J., Fullerton, Mitchell, and Bridges, JJ., concur.