60 Wn.2d 452 (1962)
374 P.2d 365
In the Matter of the Estate of HARRY J. McDONALD, Deceased.
THE STATE OF WASHINGTON, Appellant,
v.
RUSSELL W. SWANSON, Respondent.[*]
No. 35987.
The Supreme Court of Washington, En Banc.
September 6, 1962.
The Attorney General and James A. Furber, Assistant, for appellant.
McCush & O'Connor, by Frank J. Woody, for respondent.
ROSELLINI, J.
This is an appeal from the judgment of the trial court awarding certain intangibles of the decedent to the respondent, who is also the administrator of his estate. The state of Washington contested the claim of the respondent, contending that the property should escheat to it, since the decedent died intestate and left no heirs at law. The trial court found that the decedent had made a valid gift causa mortis to the respondent within a month prior to his death.
The appellant maintains that the evidence was insufficient to support the material findings of fact to the effect that the decedent delivered to the respondent savings account bank books and postal savings certificates with the intention that they were to belong to the respondent absolutely unless the decedent recovered from his pending sickness, and that the gift was made in view of his approaching death from his existing sickness.
The evidence showed that the respondent and the decedent had been friends for about ten years prior to the *454 decedent's death and had been intimately acquainted for at least six years, during which the respondent looked after the elderly man, taking him on trips and errands, buying groceries for him, visiting him when he was ill, and doing whatever favors he requested. Witnesses who had known the two testified to these facts and also testified that the decedent had stated on a number of occasions that the respondent was the only person who had been kind to him, and that he wanted him to have his property when he died.
The decedent's health failed noticeably during the six months preceding his death; and about a month before he died, the respondent took him to a nursing home. After he had been there for a few days, the respondent went to the decedent's home, found the bank books and postal savings certificates (where they were hidden in tin cans), took them to the nursing home, and gave them to the decedent. After examining them, the decedent handed them back to him, with instructions about which the respondent was not allowed to testify at the trial, owing to the restrictions of RCW 5.60.030, the "dead man statute." For the same reason, he was not allowed to disclose the source of his knowledge of the whereabouts of the items.
The respondent kept the bank books and postal savings certificates in his possession until after the decedent's death, when he turned them over to the attorney for the estate. His claim was filed a few days before the expiration of the six-month period of limitations. In it he alleged that he was entitled to the items under a contract to convey, or in the alternative as a gift causa mortis, or as representing the reasonable value of services rendered. The trial court did not find the proof sufficient to establish a contract or that the reasonable value of his services had not been proved; but it did find that all of the elements of a gift causa mortis had been sufficiently established.
[1] These elements are: (1) the gift must be made in view of approaching death from some existing sickness or peril; (2) the donor must die from such sickness or peril without having revoked the gift; (3) there must be a delivery, either actual, constructive, or symbolical, of the subject *455 of the gift to the donee or to someone for him, with the intention of passing title thereto, subject, however, to revocation in the event of recovery from the pending sickness. In re White's Estate, 129 Wash. 544, 225 Pac. 415.
[2, 3] As we said in that case, the vital, although not the only, difference between a gift causa mortis and one inter vivos is that the former may be revoked by the donor if he survive the pending sickness or peril, and does not pass an irrevocable title until the death of the donor, while a gift inter vivos is irrevocable and vests an immediate title. In determining whether a gift causa mortis is valid, this court, in harmony with other courts, stresses the pending sickness, death resulting therefrom, an intention to give, subject to revocation if death does not ensue from the pending sickness, and a delivery of the gift. The testimony on these stressed points must be clear and convincing, but need not be beyond dispute or doubt. Whether a gift of this character is valid is largely a question of fact.
[4] The burden of proof is lightened somewhat in a case of this sort, where there is no conflicting claim in a case of creditors or other subsequent donees or assignees and no heirs, and the policy of the law is to give effect to the intention of the donor and sustain the gift if possible. Phinney v. State, 36 Wash. 236, 78 Pac. 927.
[5] Because the evidence did not disclose the nature of the decedent's illness, the appellant contends that the element of pending sickness was not proved. But we think the evidence was sufficient on this point. It was shown that he had been in declining health for six months and that a month before his death he had had to enter a nursing home; that although at first he was able to go out for rides with the respondent, it was not long before he was unable to do this; that he remarked to a visitor after he had turned the bank books and certificates over to the respondent that the latter had been very good to him, and that, if anything happened to him, he wanted the respondent to have his property. When these facts are considered in conjunction with the fact that he died within a short time thereafter, it can be inferred that he was suffering from the sickness of which *456 he died and that he was aware of the fact that he might soon die when he turned the indicia of ownership of his property over to the respondent.
[6] It is next contended that there was no evidence to show that the items were turned over to the respondent with a donative intent. The appellant does not deny that the record is replete with evidence that the decedent manifested his intent to give the property to the respondent when he died, but it is apparently the theory of the appellant that the law requires proof of an intent to make a gift during the decedent's lifetime. It is true that there must be an intent to pass a present interest, but that interest is simply the right to dominion over the property, subject to the right of the donor to revoke the gift. Because of this right of revocation, the donee actually has no right to use or dispose of the property until after the death of the donor: All gifts causa mortis are conditional on the donor dying as he apprehends, the donee surviving, and the donor not exercising his right of revocation while he lives, 38 C.J.S. 909, § 94.
The evidence clearly establishes that the decedent intended the respondent to have his property on his death. He delivered it to him a short time prior to his death. From this the trial court was justified in inferring that he gave it to him to keep if he died. There was nothing in the evidence to belie that intent.
A case closely in point is Wilson v. Joseph, 101 Wash. 614, 172 Pac. 745. There the decedent delivered a diamond ring and a diamond brooch to two friends at the time of her last sickness. As in this case, there was no direct evidence of what the donor said or did when the jewelry was received by the donees. But there was evidence that she had a great deal of affection for them and had, on a number of occasions, expressed her will that they should have the jewels when she died. We held that the court could properly infer that they were delivered by her as a gift. There was in that case, as in this, not the slightest suggestion that there had been any fraud or dishonesty on the part of the recipients.
*457 We conclude that the trial court was justified in inferring from the evidence that the bank books and certificates were delivered with the necessary donative intent.
The judgment is affirmed.
FINLEY, C.J., FOSTER, HUNTER, and HAMILTON, JJ., concur.
HILL, J. (dissenting)
I dissent. The state, claiming an escheat of the property of Harry J. McDonald, deceased, appeals from an order of the probate court awarding the respondent, Russell W. Swanson, two savings bank accounts and certain postal certificates, based on a finding that there had been a gift causa mortis.
My examination of the short record convinces me that Harry J. McDonald, who died intestate, intended that the respondent, Russell W. Swanson, who had assisted him in numerous ways and was his friend, should have all of his property after his death. This included a small tract of land on which McDonald made his home (appraised at $250) and the property claimed as a gift.
The only witnesses, other than the respondent[1], so testified explicitly. The substance of the testimony of those witnesses, in their own words, is as follows:
*458 John Patton: McDonald had said that "when he [McDonald] was through with what he had it would be turned over to Russ [Swanson]."
Robert McCallum: McDonald had said: "`I'm going to leave my stuff, money and things, to him [Swanson].'" The witness suggested that he ought to make a will; to this McDonald agreed, but as the witness said: "He never did that."
Robert E. Rowe: McDonald had said to Swanson in the presence of the witness: "`if anything happens to me, I want you to have all I have.'"
There is no support, in this testimony, for a finding of any intent to make a present transfer of certain personal property. It is consistent only with an intent to make a gift or transfer to take effect upon death of all his property, real and personal.
There was no will; neither was there any evidence to establish a contract to make a will.
If it be assumed that this evidence proved an intent to make a gift causa mortis, i.e., a gift in praesenti revocable upon the recovery of the donor from his then existing illness, it was still necessary to prove delivery.
Delivery, with the present intention to make a gift (though revocable on the recovery of the donor from his then illness) is the sine qua non of a gift causa mortis. Jackson v. Lamar (1912), 67 Wash. 385, 121 Pac. 857; New-some v. Allen (1915), 86 Wash. 678, 682, 151 Pac. 111.
The Newsome case quotes from the Jackson case as follows:
"`But the courts have never departed from their vigilance in holding that something more is required to constitute a gift, either inter vivos, or causa mortis, than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence *459 that is clear and convincing, strong and satisfactory....'"
In this case, all that the trial court could know, apart from the testimony of Russell Swanson, was that Swanson had possession, after the death of Harry J. McDonald, of McDonald's two savings bank books and his postal savings certificates. When Swanson had obtained them, and under what circumstances, was established only by his testimony which was, of course, subject to the limitation of the "dead man statute" (RCW 5.60.030), heretofore set forth in note 1, supra.
In support of the theory of a gift causa mortis, Swanson testified that he found these articles in a can, among some fifty cans in McDonald's home, and brought them to the nursing home where McDonald was being cared for (from this the trier of the facts is asked to infer that McDonald told Swanson where the pass books and postal certificates were and asked Swanson to bring them to him); that he handed them to McDonald, who handed them back to him; and he retained possession of them until McDonald's death (from this the trier of the facts is asked to infer that the delivery by McDonald back to Swanson of the bank books and postal certificates was a gift in praesenti, revocable by the donor in the event of his recovery).
To strengthen these inferences, by showing the intent of the decedent to make such a gift, Swanson offered the testimony of the three witnesses, which we have heretofore summarized and which had no connection with the actual delivery of the articles, and did no more, as I view it, than indicate a desire by McDonald that Swanson should have all McDonald's property, including his home, upon his death.
Other circumstances should be considered in determining whether McDonald made a gift to Swanson. The conduct of Swanson, following the death of McDonald on December 6, 1956, was not consistent with the present claim of a gift causa mortis. Swanson signed a "Preliminary Statement" for the Inheritance Tax Division on December 17, 1956, in which he answered "no" to the question:
*460 "Did decedent at any time prior to death make transfer of a material part of his property to any person, direct, in trust or otherwise, without full consideration in money or money's worth?..."
Two months later, February 12, 1957, Swanson signed a "NOTICE OF ESCHEAT PROPERTY," advising the Inheritance Tax Division that the estate of decedent "constitutes escheat property."
Swanson apparently made no claim that a gift had been made to him until June 17, 1957 (just two days prior to the expiration of the time for filing claims), and then the claim of a gift was most equivocal. He first asserted the existence of a contract, whereby McDonald had agreed, in consideration of his (Swanson's) services to him, to provide "by will or other instrument" that all of his property would be left to and become the property of Swanson upon McDonald's death. (If this claim were sustained, Swanson would receive all of the estate, including the home.)
As a second string to his bow, in the claim filed June 17, 1957, Swanson urged there was a valid gift causa mortis of the savings bank accounts and the postal savings certificates. (Recognizing that real property could not be transferred by such a gift.)
Finally, he urged that if there was no contract and no gift causa mortis, then the value of the services rendered by him to McDonald were of the fair and reasonable value of $8,500. (The appraised value of the estate was $8,548.96.)
The trial court concluded that there was no evidence of any contract and, after indicating that the value of any services rendered by respondent was far less than $8,500, concluded that Swanson's claim for compensation must be denied. On these conclusions we all seem to be in accord with the trial court.
I find no evidence to support the trial court's finding that there was a gift causa mortis to Swanson. Certainly, there is not the clear and convincing, strong and satisfactory evidence, which is required of one who asserts title to a gift. In re Gallinger's Estate (1948), 31 Wn. (2d) 823, 199 P. (2d) 575; Jackson v. Lamar, supra.
*461 I would, therefore, set aside the order of the trial court, appealed from, which awarded the postal savings certificates and the savings bank accounts to Russell Swanson.
DONWORTH, WEAVER, and OTT, JJ., concur with HILL, J.
NOTES
[*] Reported in 374 P. (2d) 365.
[1] Respondent was barred by the so-called "dead man statute" from testifying as to statements made to him by McDonald. That statute (RCW 5.60.030) is as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: Provided, however, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen years: Provided further, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."